# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Geotab, Inc., 770 E. Pilot Rd, Suite A, Las Vegas,<br>Nevada 89119 (fco.chavez50@gmail.com) | Case No.<br><br>**20MJ0630** |

FILED
FEB 11 2020
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                          DEPUTY

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the _____ District of ____Nevada____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 952, 960, 963 | Importation of a Controlled Substance; Conspiracy to Import Controlled Substances |

The application is based on these facts:

See attached Affidavit of Special Agent Valentin Obregon

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Valentin Obregon, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/11/20

*Judge's signature*

City and state: San Diego, CA      Hon. Jill L. Burkhardt
*Printed name and title*

# **ATTACHMENT A**

Geotab, Inc., located at 770 E. Pilot Rd, Suite A, Las Vegas, Nevada 89119 (fco.chavez50@gmail.com).

## ATTACHMENT B

I. Service of Warrant

The officer executing the warrant shall permit Geotab Inc. (the Provider), as custodian of the computer files described in Section II below, to locate the files and copy them onto removable electronic storage media and deliver the same to the officer.

II. Information to Be Disclosed by the Provider

All information about the location of the 2007 freightliner tractor bearing California license plate 9F87248 with Geotab GO7-3GATMX device, Serial Number G7-3A2-OEF-00E9, FCC ID: XPYLISAU200, and associated with Geotab, Inc. Account bearing username: fco.chavez50@gmail.com (the "**Target Vehicle**") for a period from October 16, 2019, until and including December 13, 2019. "Information about the location of the Target Vehicle" includes all available GPS data, latitude-longitude data, and other precise location information regarding the vehicle described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Geotab, Inc., Geotab, Inc. is required to disclose the Location Information to the government. In addition, Geotab, Inc. must provide any assistance necessary to accomplish the collection of Location Information timely, securely, and unobtrusively, ~~including by initiating a signal to determine the location of the Target Vehicle at such intervals and times directed by the government.~~ The government shall compensate Geotab, Inc. for reasonable expenses incurred in furnishing such assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. See 18 U.S.C. § 3103a(b)(2).

III. Information to Be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 21 U.S.C. §§ 952, 960 and 963 (conspiracy to import and importation of controlled substances).

# AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Valentin Obregon, Special Agent of the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), being duly sworn, hereby state as follows:

## INTRODUCTION

1. This affidavit is in support of an application by the United States of America for a search warrant for Geotab, Inc. ("Geotab"), as described in Attachment A, to search the following account for items that constitutes evidence, fruits and instrumentalities of violations of federal criminal law, namely, 21 U.S.C. §§ 952, 960, and 963, as described in Attachment B:

> 2007 freightliner tractor bearing California license plate 9F87248 with Geotab GO7-3GATMX device, Serial Number G7-3A2-OEF-00E9, FCC ID: XPYLISAU200
> Username: fco.chavez50@gmail.com

(hereinafter, "**Target Vehicle**"),

utilized by Francisco J. CHAVEZ-Castillo ("CHAVEZ") between October 16, 2019, and December 13, 2019.

2. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Geotab to disclose to the government records and other information in its possession, pertaining to the location information regarding the **Target Vehicle**. The information contained in this affidavit is based upon my experience and training, and in consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant as described herein, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.

//

//

## EXPERIENCE AND TRAINING

3. I am a Special Agent with Homeland Security Investigations and am currently assigned to a Contraband Smuggling Investigations Group in San Diego, California. I have over five years of combined experience as a Special Agent and as a Task Force Officer with US Customs and Border Protection. I am a graduate of the Criminal Investigator Training Program and the Homeland Security Investigations Special Agent Training program at the Federal Law Enforcement Training Center in Glynco, GA. I also graduated from the University of Illinois at Chicago with a Bachelors of Liberal Arts and Sciences degree in Criminal Justice Administration. I have received basic training in conducting narcotics smuggling investigations and the enforcement of numerous Immigration and Customs laws within the United States. My training has also included the use of cellular and digital telephones and other electronic devices used by narcotics smugglers in the normal course of their illicit activities. During my tenure with HSI, I have participated in the investigation of various drug trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California.

4. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones, pagers, portable radios and GPS devices to maintain communication and location information with co-conspirators in order to further their criminal activities. This is particularly true in cases involving distribution amount quantities of controlled substances, such as methamphetamine and heroin. Typically, load drivers smuggling controlled substances across the border are in telephonic contact with co-conspirators immediately prior to, during and following the crossing of the narcotic load, at which time they receive instructions on how to cross and where and when to deliver the controlled substance. Narcotics smugglers and their organizations use cellular, digital, and satellite telephones, in part, because these individuals believe law enforcement is unable to track the

originating and destination phone numbers of calls placed to and from cellular, digital, and satellite telephones.

5. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit. This statement is made in support of an application for a warrant to search a cellular telephone that is believed to contain evidence of violations of 21 U.S.C. §§ 952, 960, and 963.

## GEOTAB, INC.

6. Geotab, Inc. is an Internet company which, among other things, provides motor vehicle telematics services to its customers. In the automotive industry, telematics describes the in-vehicle communication device, services and applications used in vehicles using Global Positioning System (GPS) receivers.

7. According to its website, www.geotab.com, Geotab develops, manufacturers, and supplies GPS fleet management solutions. Geotab's electronic service allows its customers to securely connect commercial vehicles to the Internet, providing advanced web-based analytics for fleet management and optimization. Geotab's Fleet Management Software (FMS) is computer software that allows the user to manage a variety of the tasks associated with managing a fleet of vehicles, to include vehicle, driver and incident management and tracking.

8. Geotab customers are able to remotely monitor the location and movement of their vehicles with GPS tracking. Geotab customers access Geotab's services through the Internet as well as via smart phone applications available on Apple App Store and Google Play Store.

9. A Geotab device is connected to the diagnostic port of a subscriber's vehicle where it extracts data from the vehicle's computer. The data is then transmitted via SIM card to Geotab's servers. The Geotab device itself also has sensors in it so it can send GPS, measure acceleration.

3

10. The data transmitted to Geotab from the vehicle can include, among other things, GPS location, ignition on/off, window wiper use, seat belt use, speed, harsh braking, fuel levels, battery strength, RPM, idling, accident detection, VIN readout, odometer, coolant temperature, check engine light.

## FACTS SUPPORTING PROBABLE CAUSE

### A. Francisco Chavez's Arrest

1. On December 13, 2019, at approximately 3:35 p.m., Francisco J. CHAVEZ-Castillo (CHAVEZ), a Legal Permanent Resident, applied for entry into the United States from Mexico through the Otay Mesa, California, Commercial Port of Entry. CHAVEZ was the registered owner, driver, and sole occupant of a 2007 freightliner tractor bearing California license plate 9F87248 that was hauling a 1998 commercial trailer with California plate 4EL7202 (the **Target Vehicle**).

2. CBPO Kelly Dignan was assigned to gate 8 at the Otay Mesa Commercial Import Facility. CHAVEZ declared to CBPO Dignan that he was transporting wooden doors, and gave a negative declaration when asked if there was anything else he needed to declare. CBPO Dignan was unable to locate the entry in the Automated Commercial Environment (ACE) under CHAVEZ's license plate 9F87248. Officer Dignan searched in ACE and discovered that CHAVEZ's entry was filled out under a different license plate, CA 9F80672.[1] CBPO Dignan referred CHAVEZ to X-ray due to license plate discrepancy.

3. CBPO Esteban conducted an X-ray screening of the tractor and trailer and observed anomalies, specifically, that the commodity appeared to be too dense.

4. Subsequently, CBPO Randolph observed CHAVEZ cut two high security bolt seals off of the trailer doors. CBPO Randolph observed numerous silver bundles stacked throughout the length of the trailer. Officer Randolph probed a bundle and extracted a green leafy that field tested positive for the properties of marijuana. CBPO Randolph seized a total of 538 packages of marijuana with a combined weight of 6272.80 kilograms.

---

[1] Subsequent investigation revealed that this license plate previously was used with the same 2007 freightliner truck.

5. CBPO Randolph also closely inspected the security bolt seals that CHAVEZ previously cut. CBPO Randolph noticed that the font and quality of the ink on one of the seals appeared to be different. It appeared the seal was not of the same quality as the other seal and appeared to be cloned.

6. Officers placed CHAVEZ under arrest for violating Title 21 United States Code, Sections 952 and 960, Unlawful Importation of a Controlled Substance. CHAVEZ is charged with importation of marijuana in violation of Title 21, United States Code sections 952 and 960 in the Southern District of California in case number 20CR00124-BAS. A motion hearing in this case is set for February 24, 2020, in front of the Honorable Cynthia Bashant.

**B.  Crossing History**

7. A review of crossing history revealed approximately fifty-one (51) border crossings for CHAVEZ through the Otay Mesa Commercial Facility as of June 1, 2019. Additionally, in the same time period, there were approximately thirty-two (32) border crossings through the Otay Mesa Commercial Facility for trailer CA 4EL7202, and approximately forty-four (44) border crossings (also through the Otay Mesa Commercial Facility) for vehicle CA 9F87428 (the **Target Vehicle**).

**C.  CHAVEZ's Statement**

8. Post-arrest, CHAVEZ waived his Miranda rights and elected to make a statement. He claimed he had been a driver for 20 years, and had experience hauling empty trailers, as well as trailers fully laden with merchandise. CHAVEZ claimed he owned his own trucking company starting in 2012. CHAVEZ has had a total of three tractors but only one is working currently.

9. CHAVEZ stated he was in communication with an individual by the name of Ezequiel Navarro regarding this shipment. According to CHAVEZ, Navarro worked for a Mexican broker. CHAVEZ had done six prior jobs for Navarro. CHAVEZ denied knowledge of the drugs, but stated that Navarro must have known about the drugs.

5

10. According to CHAVEZ, the day before his arrest, CHAVEZ dropped off the trailer empty at a factory in Tijuana, Mexico, so that they could load the wooden doors. Navarro called CHAVEZ the day before his arrest to tell CHAVEZ to pick up the trailer at 11:30 A.M. at the factory along with the entry paperwork.

11. On the day of the arrest, CHAVEZ arrived at the yard where his tractor was parked at 10:00 A.M, and departed the yard in his tractor at approximately 10:20 A.M. to go pick up the trailer. CHAVEZ arrived at the factory at approximately 11:10-11:15 A.M. CHAVEZ stated that the doors were already closed when he arrived. CHAVEZ stated that the security seals are placed on the trailer doors, and someone at the factory takes a photograph of them. The photo is then sent to the Mexican broker for the manifest.

12. According to CHAVEZ, he departed the factory at approximately 11:40 A.M. and went to the Mexican broker for the "pedimento" (import document). CHAVEZ estimated that the distance from the factory to the Mexican broker was approximately three miles. CHAVEZ arrived at the Mexican broker at approximately 12:15 P.M. CHAVEZ then left the Mexican broker at approximately 1:15 P.M. to get in line to cross into the United States. CHAVEZ got in line at approximately 1:45 P.M.

13. CHAVEZ claimed he was going to drop the trailer off at a location on Britannia Road in Otay Mesa, California. CHAVEZ claimed that the trailer was going to be offloaded that evening, and CHAVEZ was going to pick up the trailer the following day. CHAVEZ then changed where he was going to drop the trailer off to a location off of Heritage Road. CHAVEZ explained that he had dropped off trailers there in the past.

14. During the interview, CHAVEZ called Navarro. Navarro told CHAVEZ to drop off the trailer at California Parking. Navarro told CHAVEZ to do the same as always and take photos of the seals. Navarro asked CHAVEZ why it took so long. Navarro stated that they were going to offload the trailer there tonight or the following day. Navarro asked CHAVEZ to let him know and to take photos.

15. CHAVEZ stated that California Parking was located off of Airway Road.

6

16. Navarro called CHAVEZ during the interview and asked CHAVEZ if they gave him the hinges. CHAVEZ told Navarro that they did not give him the hinges. Navarro told CHAVEZ to let him know once he was at California Parking and not to forget to take photographs. CHAVEZ stated he would take photos of the seals.

17. CHAVEZ stated it was not the first time he left a trailer at California Parking. CHAVEZ stated this would be the third time he dropped off a trailer at California Parking.

18. CHAVEZ stated that his tractor is equipped with GPS services provided by Geotab, Inc., and gave his username (fco.chavez50@gmail.com) for the account associated with the **Target Vehicle** to the agents. CHAVEZ also showed agents some of the logs in the MyGeotab Fleet Management application on his phone, which I believe were associated with the **Target Vehicle**. CHAVEZ claimed his GPS location information would show his whereabouts and movement on the days he was dropping the trailer off and picking it up.

11. During a subsequent search of the tractor, I found and seized a Geotab GO7-3GATMX device, Serial Number G7-3A2-OEF-00E9, FCC ID: XPYLISAU200. The device was connected to the **Target Vehicle** by wires and located in the floor panel on the driver's side near the door.

12. Based upon my experience investigating narcotics traffickers and the particular investigation in this case, I believe CHAVEZ and other co-conspirators were engaged in a conspiracy to smuggle narcotics into the United States from Mexico. Based on CHAVEZ's statement, there is data that may exist and be available in account associated with the **Target Vehicle**, such as dates, times, locations, contacts, and attached files, which could reveal information relevant to this investigation. There is probable cause to believe that vehicle telematics data for the **Target Vehicle** will contain information and evidence of the physical location of CHAVEZ's tractor.

13. I know that narcotics trafficking activities entail intricate planning to successfully evade detection by law enforcement. This planning often includes coordination on crossing the border to develop a crossing history or pattern. In my professional experience, narcotics trafficking activities involve planning and coordination

7

in the weeks and often months prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their cargo.

19. In this case, CHAVEZ is the registered owner of the tractor. There were 538 packages containing marijuana with an aggregate weight of 6272.80 kilograms found in the trailer hauled by CHAVEZ's tractor on the day of his arrest.

14. From June 1, 2019, until his arrest, CHAVEZ had forty-four (44) border crossings through the Otay Mesa Commercial Facility in the **Target Vehicle**. During the same time period, he also crossed in other vehicles via other ports of entry.

15. According to customs information, CHAVEZ first transported wood doors from Mexico into the United States using the **Target Vehicle** for St. Veneers on October 17, 2019. He subsequently made three more trips carrying wood doors on October 23, November 19, and December 5, 2019.

16. After his arrest on December 13, 2019, CHAVEZ claimed he was going to drop off the trailer at California Parking, and that he previously dropped off a trailer at California Parking on two occasions. Additionally, CHAVEZ claimed that his Mexican broker, Navarro, must have known about the drugs. CHAVEZ admitted that he had previously done six jobs for Navarro.

17. The evidence supports that probable cause exists to search Geotab, Inc. for location information regarding the **Target Vehicle** dating back to October 16, 2019, the day before CHAVEZ made the first trip carrying wood doors, and until December 13, 2019, the day of CHAVEZ's arrest.

18. Additionally, it is believed that the records are still available to Geotab as a request to preserve the account associated with the **Target Vehicle** was made under 18 U.S.C. § 2703(f).

//
//
//

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

19. The United States is unaware at this time of other attempts by the U.S. government to obtain this data by other means. I am currently seeking, in a separate application, a search warrant for the Geotab GO7-3GATMX device found in CHAVEZ's vehicle.

## PROCEDURES FOR ELECTRONICALLY STORED INFORMATION

20. Federal agents and investigative support personnel are trained and experienced in identifying communications relevant to the crimes under investigation. The personnel of Geotab are not. It would be inappropriate and impractical for federal agents to search the vast computer network of Geotab for the relevant accounts and then to analyze the contents of those accounts on the premises of Geotab. The impact on Geotab's business would be severe.

21. Therefore, I request authority to seize all content, including all location information for the **Target Vehicle**, as described in Attachment B. "Information about the location of the Target Vehicle" includes all available GPS data, latitude-longitude data, and other precise location information regarding the vehicle described in Attachment A. In order to accomplish the objective of the search warrant with a minimum of interference with the business activities of Geotab, to protect the rights of the subject of the investigation and to effectively pursue this investigation, authority is sought to allow Geotab to make a digital copy of the entire contents of the accounts subject to seizure. That copy will be provided to me or to any authorized federal agent. The copy will be forensically imaged and the image will then be analyzed to identify communications and other data subject to seizure pursuant to Attachment B. Relevant data will be copied to separate media. The original media will be sealed and maintained to establish authenticity, if necessary.

22. Analyzing the data to be provided by Geotab requires special technical skills, equipment and software. It also can be very time-consuming. Searching by keywords, for example, often yields many thousands of "hits," each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant.

1  Merely finding a relevant "hit" does not end the review process. Certain file formats do not lend themselves to keyword searches. Keywords search text. Many common electronic mail, database and spreadsheet applications, which files may have been attached to electronic mail, do not store data as searchable text. The data is saved in a proprietary non-text format. And, as the volume of storage allotted by service providers increases, the time it takes to properly analyze recovered data increases dramatically.

23. Based on the foregoing, searching the recovered data for the information subject to seizure pursuant to this warrant may require a range of data analysis techniques and may take weeks or even months. Keywords need to be modified continuously based upon the results obtained. The personnel conducting the segregation and extraction of data will complete the analysis and provide the data authorized by this warrant to the investigating team within ninety (90) days of receipt of the data from the service provider, absent further application to this court.

24. Based upon my experience and training, and the experience and training of other agents with whom I have communicated, it is necessary to review and seize all electronic mails that identify any users of the subject account(s) and any electronic mails sent or received in temporal proximity to incriminating electronic mails that provide context to the incriminating mails.

25. All forensic analysis of the imaged data will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

//
//
//
//
//
//
//
//

10

## **CONCLUSION**

26.  Based on all of the facts and circumstances described above, I submit that there is probable cause to believe that the items identified in Attachment B have been used in the commission of a crime and constitute evidence, fruits, and instrumentalities of violations of 21 U.S.C. §§ 952, 960 and 963, and that the foregoing will be found on the premises searched, as identified in Attachment A.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Valentin Obregon
Special Agent

Subscribed and sworn to me before this 11 day of February, 2020.

The Honorable Jill L. Burkhardt
United States Magistrate Judge

11

# **ATTACHMENT A**

Geotab, Inc., located at 770 E. Pilot Rd, Suite A, Las Vegas, Nevada 89119 (fco.chavez50@gmail.com).

# ATTACHMENT B

**I.** Service of Warrant

The officer executing the warrant shall permit Geotab Inc. (the Provider), as custodian of the computer files described in Section II below, to locate the files and copy them onto removable electronic storage media and deliver the same to the officer.

**II.** Information to Be Disclosed by the Provider

All information about the location of the 2007 freightliner tractor bearing California license plate 9F87248 with Geotab GO7-3GATMX device, Serial Number G7-3A2-OEF-00E9, FCC ID: XPYLISAU200, and associated with Geotab, Inc. Account bearing username: fco.chavez50@gmail.com (the "**Target Vehicle**") for a period from October 16, 2019, until and including December 13, 2019. "Information about the location of the Target Vehicle" includes all available GPS data, latitude-longitude data, and other precise location information regarding the vehicle described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Geotab, Inc., Geotab, Inc. is required to disclose the Location Information to the government. In addition, Geotab, Inc. must provide any assistance necessary to accomplish the collection of Location Information timely, securely, and unobtrusively, ~~including by initiating a signal to determine the location of the Target Vehicle at such intervals and times directed by the government~~. The government shall compensate Geotab, Inc. for reasonable expenses incurred in furnishing such assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. See 18 U.S.C. § 3103a(b)(2).

**III.** Information to Be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 21 U.S.C. §§ 952, 960 and 963 (conspiracy to import and importation of controlled substances).